THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* WILLIAM DALTON, Defendant.

County Court, Suffolk County, January 16, 1953.

*Lindsey R. Henry, District Attorney (Harry C. Brenner* of counsel), for plaintiff.

*William Dalton*, defendant in person.

HAZLETON, Acting County Judge. This is an application for an order in the nature of a writ of error *coram nobis*, in which the present intermediate relief sought is an order directing the

deliverance of the defendant petitioner so that he might testify in his own behalf (Code Crim. Pro., § 10-c). This type of application has become popular with criminals who seek to escape serving the full term of the sentence last imposed upon them. Such is the case here, where defendant in June, 1930, was sentenced by the County Judge of Suffolk County to Elmira Reformatory upon his plea of guilty to grand larceny, second degree. Thereafter, the defendant's record shows him to have been a perennial law breaker, culminating in his return to Attica State Prison as a parole violator to serve out the balance of a term of from ten to twenty years imposed in 1937 for burglary. It is to avoid serving the remainder of this sentence that the *coram nobis* proceeding was instituted, its objective being to void defendant's conviction in 1930 upon the grounds that at the time defendant was arraigned, plead guilty and was sentenced, he was not advised of his right to counsel, was not offered or represented by counsel and did not waive his right to counsel. If these allegations of fact be true, then the 1930 conviction would be nullified. (Code Crim. Pro., §§ 8, 308; *Matter of Bojinoff* v. *People,* 299 N. Y. 145; *People* v. *Richetti,* 302 N. Y. 290; *People* v. *Guariglia,* 303 N. Y. 338; *People* v. *Langan,* 303 N. Y. 474.)

The sentencing Judge, District Attorney and stenographer are dead. There are no stenographic records of the court proceedings; only the clerk's minutes written in longhand.

On May 12, 1930, defendant and his codefendant " being arraigned, waived the reading of the indictment and pleaded not guilty " with respect to Indictments Nos. 1035, 1036 and 1037. Edward T. Coyle is listed as counsel for Indictments Nos. 1035 and 1037; no appearance is noted with respect to Indictment No. 1036.

On June 9, 1930, the codefendant was tried on burglary third degree and grand larceny second degree (Indictment No. 1037). The jury found the defendant guilty of the second count but voted to dismiss the first. Bertram N. Manne is listed as counsel. On June 10, 1930, Dalton pleaded guilty to grand larceny, second degree (Indictment No. 1037). E. T. Coyle is listed as counsel. The Clerk's Minutes for June 10, 1930, further recite:

" This indictment [1035] was dismissed June 10, 1930, on the motion of the attorney for the defendants." " Manne and Coyle, Esqrs., Counsel."

"This indictment [1036] was dismissed June 10, 1930, on the motion of the attorneys for the defendants." "Edward T. Coyle, Counsel."

Mr. Coyle has passed away, and all efforts to locate Mr. Manne have been to no avail.

The District Attorney in his sworn affidavit in opposition, after adverting to the relevant portions of the clerk's minutes, states: "The records show that the defendant was represented by Edward T. Coyle, Esq., attorney-at-law, both on the arraignment and at the time he pleaded guilty and was sentenced. * * * Examination of the records of the County Court of the County of Suffolk disclose that the defendant was represented at all stages of the proceedings. * * * It therefore, seems that the defendant's memory has failed him. * * * There being no issue raised by his petition in view of the uncontrovertibility of the records, it is respectfully submitted that the application in all respects be denied."

There are no notations regarding counsel, on the original indictments. There are no notices of appearance filed by either of the attorneys. A notice of trial was sent to each attorney, but neither notice, on its face, indicates whom each recipient thereof represented. One may infer that of these two notices, one was directed to the attorney representing defendant; the other, to the attorney representing the codefendant. Moreover, since Mr. Manne is listed in the minutes as having represented the codefendant at his trial on June 9, 1930, one could logically conclude that Mr. Coyle was the attorney for Dalton, especially since he is listed as counsel for him at the time of his plea of guilty.

On the other hand, defendant alleges in his reply to the affidavit of the District Attorney that: "At all of these Court appearances stated by Mr. Assistant District Attorney alleging that petitioner was represented by Counsel, That is not so, He should have said my to [sic] Defendant George Papanickolopulos, ' Father ' had secured Counsels for him not me ".

As noted above, Mr. Coyle is listed in the minutes as counsel at the time of the arraignment on May 12, 1930. The first notice was sent to Mr. Coyle on May 27th, trial notice for June 3d. The second notice was sent to Mr. Manne on June 5th, trial notice for June 9th. It is entirely possible that Mr. Manne was retained to represent Papanickolopulos, either as successor or in addition to Mr. Coyle as counsel for Papanickolopulos. This is consistent with the clerk's minutes and the two notices of trial

as well as the sworn and uncontroverted allegations of defendant in this connection.

In view of the fact that the " crime " was committed in the township of Brookhaven, located on eastern Long Island, and the two defendants both lived in Brooklyn, the most appealing inference is that regardless of what took place after that event, the court assigned Mr. Coyle, whose office was in Riverhead, to represent BOTH defendants at the arraignment.

Mr. Manne, the attorney who represented the defendant Papanickolopulos upon his trial, had his office at No. 16 Court Street, Brooklyn. However, this inference does not compel the conclusion that defendant had the benefit of counsel at the arraignment where, defendant swears, he was not conscious of nor did he authorize such representation, an allegation not specifically denied by the People. (*People* v. *Samet,* 279 App. Div. 767.) Nevertheless, let us assume *arguendo* that defendant was adequately represented at the time of his arraignment or, in the alternative, that any defect in representation at that time would have been remedied by adequate representation on June 10, 1930. The question determinative of this application remains: Was Dalton at the time of his plea of guilty represented by counsel; was he aware of the fact and did he authorize his counsel to enter the plea of guilty? Unless defendant's allegations are " conclusively refuted by unquestionable documentary proof contra ", a hearing must be granted. (*People* v. *Richetti,* 302 N. Y. 290, 296, *supra.*)

In *People* v. *Guariglia* (*supra*) where the only appearance noted for the defendant was at the time of imposition of sentence, the Court of Appeals was careful to point out that " The issue here is not so much whether petitioner was timely and properly represented by counsel but whether under the circumstances it may be said that he consciously knew of and authorized such representation at the time of sentence." (P. 342.) The stenographic transcript of the proceedings at the time of sentence in the *Guariglia* case showed the attorney in question to have said: " In the Patsy Guariglia case your Honor knows the facts and I leave it in your hands." The court specifically held (p. 342), that " The stenographic entry relied on by the People to the effect that counsel left it ' in the hands of the court ' does not convincingly demonstrate the falsity of the sworn allegations to the contrary."

In addition to the transcribed statement, there was a written notice of appearance on behalf of the defendant, Guariglia, filed

by the attorney before the day of sentence. The court stated that the issue was not the timeliness of the representation and went on to say, at page 343: " So much of the record as is now before us is silent as to what happened in chambers and the petitioner's version is not contradicted. This raises an issue entitling the petitioner to a hearing for if true he would be entitled to an order *coram nobis*. (*Matter of Lyons* v. *Goldstein*, 290 N. Y. 19.) It is only when the record conclusively demonstrates the falsity of the allegations and there is no reasonable probability at all that defendant's averments are true that a hearing will be denied (*People* v. *Richetti, supra* [302 N. Y. 290]) ". Here, there is no stenographic transcript at all, no notice of appearance, no notations on the indictments, a set of clerk's minutes not necessarily inconsistent with defendant's allegations, and two notices of trial having the same characteristic.

There remains the question of waiver. Defendant alleges that when he was brought up for trial with his codefendant on June 9, 1930, although his codefendant answered ready, he, defendant, requested an adjournment on the ground that he had no counsel — he not having the money, or, in contradistinction to his codefendant, the relatives to furnish the money for counsel. Yet, on June 10, 1930, defendant appeared before the court, with counsel whose representation defendant allegedly did not know of or authorize, and entered a plea of guilty to grand larceny, second degree. Did defendant impliedly waive his rights to counsel by these actions, notwithstanding the absence of an explicit oral or written waiver thereof in the record before this court?

Nowhere does the record disclose that the court advised defendant of his right to counsel (Code Crim. Pro., §§ 8, 308; see *People* v. *Guariglia, supra*) ; and this court will not indulge in the presumption that he was aware of such right. (*People ex rel. Moore* v. *Hunt*, 258 App. Div. 24.) Under these circumstances, the court cannot say, as a matter of law, that defendant's course of conduct constituted a waiver. (See *Uveges* v. *Pennsylvania*, 335 U. S. 437, 441, and notes in 93 L. Ed. 143–144.) In spite of the miserable life of the defendant, this court must not lose sight of the fact that in this proceeding it is concerned with a rule of law existing for the common good, and not merely the operation of that law insofar as the defendant alone is concerned. The individual may mean little, but the right of that individual to be informed of his right to have counsel at every

step in the proceeding under attack must continue inviolate. Hence, if any doubt exists at this stage of the proceedings, same should be resolved in favor of the defendant. While I cannot venture to say what the court would decide after a hearing in which it could fully acquaint itself with the facts necessary for a determination (see discussion anent waiver by County Judge FARRELL in *People* v. *Richetti,* 109 N. Y. S. 2d 29, 43–45, after remission of that case by the Court of Appeals, 302 N. Y. 290), I do think that any decision upon waiver at this point would be premature.

It is my opinion that on the records available, the defendant's sworn allegations — some of which stand uncontroverted — are not conclusively demonstrated to be false. (*People* v. *Guariglia, supra.*) These allegations constitute grounds for *coram nobis* relief (*Matter of Bojinoff* v. *People, supra; People* v. *Richetti, supra; People* v. *Guariglia, supra; People* v. *Langan, supra*); and the defendant is not estopped from proving them by his failure to raise the issues created thereby when sentence was passed or by his long delay in initiating this proceeding. (*Matter of Bojinoff* v. *People, supra; People* v. *Richetti, supra.*) " ' [I]mprobable or unbelievable though the allegations may seem — though they may tax credulity — the defendant is entitled to a hearing.' " (Address of Judge FULD on The Writ of Error Coram Nobis, N. Y. L. J., June 5, 6, 7, 1947, quoted with approval in *People* v. *Richetti, supra,* p. 297.)

The application of petitioner is granted, and this court assigns Gordon M. Lipetz, Esquire, of Riverhead, N. Y., as his counsel. Submit order accordingly.