■  THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. ANTHONY VELLUCCI, Appellant.— Order of the Court of General Sessions of New York County entered October 26, 1960, denying, without a hearing, defendant's application for a writ of error *coram nobis* to vacate a judgment of said court rendered March 15, 1956, convicting defendant on his plea of guilty of possession of a narcotic drug, reversed, on the law and on the facts, and the cause remanded for a hearing. Although the record might tend to indicate otherwise, we feel that defendant's claim that his plea of guilty was induced by a definite understanding between the court and his counsel that his sentence would be less than that which he received, and whether counsel was misled in advising the defendant to change his plea in the course of the trial present issues of fact which may not be resolved without a hearing. (*People* v. *Farina,* 2 N Y 2d 454; *People* v. *Richetti,* 302 N. Y. 290; cf. *People* v. *Scott,* 10 N Y 2d 380.) Relevant also is whether the city detective conveyed to defendant the court's satisfaction with his alleged co-operation and whether this was with the knowledge of the court.

" So much of the record as is now before us is silent as to what happened in chambers and the petitioner's version is not contradicted." (*People* v. *Guariglia,* 303 N. Y. 338, 343.) Concur — Rabin, J. P., McNally, Stevens and Eager, JJ.; Valente, J., dissents in the following memorandum: The sole issue on this appeal from the denial of a writ of error *coram nobis* is whether the petition and supporting affidavits raise issues that require a hearing. I dissent from the holding of the majority remanding the matter for a hearing because, as I read the papers herein, they not only fail to present any issue requiring a hearing, but affirmatively negate the existence of any semblance of a triable issue. The thrust of petitioner's claim is that he was induced to plead guilty by promises and representations made by the trial court to his attorneys. The sentencing minutes irrefutably belie this contention. What happened at the time of plea and sentence is crystal clear and the record reflects it step by step. In the course of the trial of an indictment — which charged the petitioner and a codefendant with possession of 30 pounds of 82% pure heroin of a market value of one and one-half million dollars wholesale — negotiations were opened with the Trial Judge looking to a plea. It should be noted that the attorneys representing the petitioner and his codefendant were experienced and competent counsel and thus not liable to be the victims of any implied misrepresentations or lulled into a sense of false security if indeed any such attempt were made by the trial court. Additionally, up to the time the plea was taken, the trial had been bitterly contested. After considerable dickering, the defendants entered pleas of guilty to an attempt to feloniously possess a narcotic drug with intent to sell under the first count, and to felonious possession of a narcotic drug under the second count. Since the defendants might be second felony offenders, this afforded the court a range of sentence of from 3 years 9 months minimum to 4 years maximum on the one count, and a minimum of 19 years and a maximum of 20 years on the other count. The sentencing minutes establish that this was understood by counsel. The minutes also contain the concession by defense counsel that the court never spoke to the defendant or his wife at any time during the negotiations. They reflect a specific unqualified acknowledgment by the defendant's attorney that the only representation made by the court to him was what the limits of the range of sentence would be. This conclusively refutes the statement in the supporting affidavit of this same attorney that: " The inference we gathered was that the Judge would have to impose a minimum sentence of at least three and a half years, and although we asked the. Judge what the maximum sentence would be, he would not give any indication as to the maximum sentence but led us to believe that he would not impose the maximum sentence if the defendants pled guilty." Thus, all that remains is the defendant's unsupported statement that he pleaded guilty as the result of representations and assurances that he would receive a sentence of not more than 3 years 9 months to 6 years maximum. When we consider the amount of heroin involved, the absurdity of this claim is self-evident. That the court insisted on a plea that would give broad latitude in sentence is also unmistakable from the minutes. The court was of the opinion that the defendants had information which if furnished to the authorities would lead to the apprehension of higher-ups in the drug racket. If this information were given, credit for such assistance could be reflected in the sentence. Although opportunity was afforded the defendant to furnish this information, it was not forthcoming; and a sentence from 14 to 15 years was imposed. In the course of sentencing this defendant the court stated " If you had seen fit to pay your debt to society by helping society run down the nefarious trade, to get to those sources, I would have great joy in giving you credit for it." That the defendant and his attorney were aware of this understanding is reflected by what transpired after sentence was imposed.

Defense counsel applied for a stay of commitment for a one-week period. The court granted this request; whereupon the attorney inquired, "In the event that there is cooperation?", and the court replied, "Anything that is called to my attention by the District Attorney, the Police Department or the Federal authorities, I will be happy to take into consideration." Parenthetically, the court, having stayed the commitment, still retained the power to change the sentence. Thus the door was held open for an additional week in the event the petitioner changed his mind. The petitioner does not contend that he gave information. The gravamen of this *coram nobis* is not that defendant kept his bargain with the court and gave information, and the court reneged. For reasons better known to him, the petitioner refused the opportunity to bail himself out. We should not defile the laudable purpose of *coram nobis* by permitting a hearing on such a patently false claim. Coming as it does, four years after the event, it is a sheer brazen effrontery to the administration of criminal justice that should not be countenanced or entertained. The sentencing minutes so clearly refute the petitioner's claim as to make a hearing unnecessary. (*People* v. *Hernandez*, 8 N Y 2d 345; *People* v. *Picciotti*, 4 N Y 2d 340.)